The next case this morning is 523-0656 People v. Smith. Arguing for the appellant is Thomas Skelton. Arguing for the appellee is Valerie Osment O'Brien. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning. If you all are ready for us, we're ready for you. So Mr. Skelton, you may begin. Thank you. Good morning, Your Honors, and may it please the court. My name is Tom Skelton from the Office of the State Appellate Defender, and I represent the appellant, in this case, Mr. Jalen Smith. In this appeal, Jalen argues that his conviction under the armed violence statute violates the Second Amendment as applied to him and facially. Jalen was convicted of armed violence, in this case, for possessing a handgun and possessing two small packets of cocaine. He challenges his conviction under the familiar two-step analysis announced in Broome, where the court asks, first, whether the Second Amendment's plain text covers an individual's conduct, and second, whether the state can demonstrate that its law is consistent with the nation's history and tradition of firearms regulation. I want to highlight three points for this case. First, Jalen was convicted for possessing a handgun and possessing 0.3 grams of cocaine, an amount that was clearly for personal use. This simple transgression does not mean that the Second Amendment does not apply to him. Let me stop you. The state's arguments are pretty clear in reply to yours. The Second Amendment does not protect criminal activity. The possession of the gun at the time of committing a criminal act is what is in question. How do we get around that? What is the argument that says every individual, regardless if they are being convicted of crimes, whether they are law-abiding or not, my understanding of what the state's position is, is that the Second Amendment applies to law-abiding activity and law-abiding individuals. It does not apply to criminals in general or people committing criminal acts while armed. How do we address that? Before you address that, the clock is not running. Oh, thank you. It probably should be about nine minutes now. Okay, well. Or we can go with 10, whatever. I've been letting everybody go ahead anyway, so if you need a little, you might have a little extra time. Go ahead. Thank you. Well, if you look at the Supreme Court's decision, and Rahimi rejected a similar argument, and this court's decision in Stevens also rejected a similar argument in the first step of the Bruin analysis. In Stevens, I believe it was an unlawful possession of weapons by felon conviction, and this court said, regardless of the defendant's criminal history, the Second Amendment does apply to them for the first step of the Bruin analysis, and moved on to the second step of whether the regulation was consistent with the nation's history and tradition of firearms regulation. So regarding the first step of the Bruin analysis, I think that there's a lot of authority that the Second Amendment still applies to Jalen regardless of his possession of cocaine at the same time he possessed a handgun. The second point I want to make is that moving to the second step of the Bruin analysis, this court should prefer the historical analysis we cited in the Conley and Daniels cases because the federal statute there more closely tracks how the armed violence statute operated in Jalen's case. In Jalen's case, the state only needed to prove that Jalen possessed a handgun while And this is essentially the same as the federal law section 922.3g that forbids drug users from possessing handguns, the federal law applied in those cases. In its brief, the state tries to distinguish between possessing guns and being a drug user, but this is really a distinction without a difference. So if you look to the second step of the Bruin analysis in those two cases, it more closely tracks how armed violence is operating in this case. It isn't the Second Amendment only temporarily implicated in this though because it's not saying the defendant can't possess a weapon some other time, it's just he can't possess it while he's drugs committed another felony. So the Second Amendment implication is temporary at best, isn't it? I mean, it's an element of the offense here that the state had to prove that Jalen possessed a handgun. Because it's an element of the state's case that necessarily the Second Amendment is implicated and going back to the first step of the Bruin analysis that the Second Amendment, the state has criminalized in part Jalen's possession of a handgun. Bruin also says, I mean, it says, quoting, could not have been more clear that its newly announced test applies only to laws that attempted to regulate the gun possession of law-abiding citizens and not felons like the defendant. I mean, that seems pretty clear. I think, I mean, yeah, there has been these quotes from, I'm not sure if it was McDonald or Heller, which was dicta in those cases. But if you look in Rahimi, the Supreme Court seems to clarify that regarding this two-step analysis, that they weren't saying that the Second Amendment just doesn't apply to felons or people that they deem responsible or dangerous people or other synonyms, that they're saying that the Second Amendment is a right like other amendments in the Constitution and that it applies to everybody. Well, and I don't disagree with you on that. And then once that everybody who it applies to commits a crime, then they lose that protection of, is my understanding what the state's trying to argue. So I'm just trying to get around how we get around that. I think that this court has to move to the second step of the Bruin analysis and ask whether the armed violence statute, especially as applied to Jalen, is consistent with the nation's history and tradition of firearms regulation. And in those federal cases that I cited, they analyzed the history of disarming people with mental illness, disarming dangerous people and intoxicated people and found that there wasn't a sufficient history and firearms regulation to justify disarming the defendant. I'd submit that that analysis is most applicable to Jalen's case. Are you familiar with the Williams case out of the Sixth Circuit, 113 F4 at 658, where they set out three classifications of felonies? One, class one is a crime against a person like aggravated battery or rape or murder, those types of things. The second category poses a danger to the community. And the third category would be like mail fraud, or they cite the example of opening a ketchup bottle in a supermarket and putting it back on the shelf as a third degree felony. In those cases, it might not apply, but the first two, it would be appropriate to borrow possession of a weapon while those crimes are occurring. Are you familiar with that test or that case? I might not, but not specifically. I was going to ask what would be the wrong with us applying a test similar to that laid out in Williams, but if you're not familiar with that case, maybe that's not the right question. Well, I think to try to attempt to answer, I think going back to how the armed violence statute operates here, the predicate felony is just a possession of a small amount of cocaine. That's all the state needed to prove to convict Jalen. And I don't think that this small possession of cocaine is necessarily the same as some of the other offenses that you mentioned discussed in the Williams case. The third point I want to make is that the state has an overly broad interpretation of Jalen's facial statute to the armed violence statute. It contends that Jalen needs to prove that every application of armed violence is unconstitutional, but this is just not how Illinois courts analyze the armed violence statute. If you look at People v. Lombardi, they're a case analyzing a proportionate penalties challenge to armed violence, but the Illinois Supreme Court looked at the specific application of weapons possession and predicate offense and analyzed that under the proportionate penalties clause. I think that this is good support that Jalen's facial challenge is limited to the specific combination of possession of a gun and possession of a controlled substance. He shouldn't have to prove that every possible combination of weapons possession and predicate offense is unconstitutional to succeed on his facial challenge. Why isn't this analogous to alcohol type cases? It's not against the law to drink alcohol. It's not against the law to be an alcoholic and drive, but it is against the law to drive with alcohol in your car or drive one under the influence. Why is it this similar? It may not be why can't the state prohibit having a weapon while you have illegal drugs? That seems to me common sense. I'd say there's no evidence in this record that Jalen was intoxicated at the time the state... I'm not saying that. I'm saying if you have alcohol in the car and drive, that's a violation of Illinois law. If you have drugs in your possession while you have a gun, why isn't that in and of itself appropriate behavior to bar? Yeah, I go back to Conley and Daniels analyzed this and found that there was a historical tradition of disarming people when they are intoxicated, but that doesn't necessarily mean that everybody who possesses alcohol would be disarmed. It was specific to if somebody was intoxicated at the same time they were carrying a gun. I see that my time is up. Okay, you'll have time in rebuttal. Are there any questions before we move on? No other questions. No questions. Thank you. Ms. O'Brien. Good morning, your honors and counsel and may it please the court. My name is Valerie Osment O'Brien and I represent the state of Illinois in this matter, the people of the state of Illinois versus Jalen Smith. The sole issue on appeal is whether the armed violence statute is facially constitutional under the second amendment or whether it is constitutional as applied to the peers of armed violence predicated on the felony offense of possession of a controlled substance. The defendant was charged with armed violence, which is a class X felony, and that he was found with a firearm on his waistband while also knowingly possessing less than 15 grams of cocaine, which is a class four felony. On appeal, the defendant argues that the armed violence statute is facially unconstitutional based on the analysis set forth in Bruin. This court has a duty, important to note, to construe the armed violence statute in a manner that upholds its validity if it reasonably can, and the state's position is that it absolutely can. With respect to the defendant's argument that the armed violence statute is facially unconstitutional, a statute is facially unconstitutional only if it is constitutional under any set of facts, or in other words, if there are no circumstances in which the statute could be validly applied, and that is not the case here. The U.S. Supreme Court in the Heller case stated that it had long been understood that the right to keep and bear arms under the second amendment is not a right to keep and carry any weapon whatsoever in any manner and for whatever purpose. The court explained that nothing in our opinion should be taken to cast doubt on the long-standing prohibitions on possession of firearms by felons or laws forbidding carrying firearms in certain places or regulations on the commercial sale of them. The court described those measures as permissible and exceptions to the right of the second amendment. The court in Bruin then explained that when evaluating the constitutionality of a statute, the court must first determine whether the second amendment's plain text covers an individual's conduct, and if it does, then the constitution presumptively protects that conduct, and the government must then justify its regulation by demonstrating that it is consistent with the nation's history and tradition of firearm regulation, and only then may a court conclude that the individual's conduct falls outside the second amendment. As your honors discussed in opposing counsel's argument, there's a question as to whether the second amendment even protects the defendant in this case because he was currently committing a felony at the time that he was charged. In this case, he argues that his conduct fell within the scope of the second amendment. However, Bruin made clear that the second amendment only protects law-abiding responsible citizens, so the amendment does not protect people committing felonies while armed or the conduct of committing a felony while armed, as was the case here. What about this argument that counsel made about Rahimi allowing beyond the first stage of Bruin that it stands for the proposition that he can possess the weapon? What about the argument that counsel made that Rahimi allows him to possess a weapon? So your honors asked specifically about the Stevens case, which this court decided back in September. If it's okay with the court, I will discuss it, even though neither party cited it, if that's all right. I was just looking at it in that decision. This court didn't specifically say it wasn't going to, it wasn't, this court basically said it wasn't going to make that determination. It just found it better to analyze the issue in that case, or it was more properly evaluated under the second prong of the Bruin analysis, so it just kind of bicep whether or not the defendant was part of the people that the second amendment protects. This court can choose to decide it based on that. There are a whole host of cases that say the second amendment does not apply to this defendant, but if this court chooses to include the defendant in this case as part of the people, then the next step under the Bruin analysis would be whether or not the history and traditions of firearm regulation support this legislation. Was that your question, your honor? Well, I just, I mean, does Rahimi in fact apply here? Do you believe that it's analogous to the case that we have here? I am not remembering the facts of that case at this moment. I apologize. This was not originally my case, so I've been spending the past few days preparing, but I'm assuming it has something to do with the fact that they considered the defendant in that case to be part of the people the second amendment protects? That's correct. Okay, well, even if this court determines that the second amendment protects this defendant, then he still loses based on the second part of the Bruin analysis. I'm not going to waste this court's time arguing why it shouldn't, but there has been long-standing precedent that does state that the second amendment does not protect people who are, there's a whole lot of cases that have held in other statutes such as unlawful aggravated use of a weapon and whatnot that those people had previously committed felonies, whereas it's a little different in this case. Our defendant didn't have any previous felonies, but he was actively committing a felony during the time that he was charged, so it's a little different in this case. But moving on to the next step, the plain text analysis asks whether the second amendment's text covers an individual's conduct, which involves consideration of the person at issue. Here, the defendant defines the issue as the conduct of possessing a firearm, and he argues that the conduct is protected by that amendment. However, in defining the conduct at issue for purposes of the Bruin analysis, the court must examine the elements of the challenged criminal statute. So, for example, in the Hatcher case, which was the first district case in Illinois, the defendant raised a facial challenge to the subsections of the AUUW statute, which he was convicted, which involved the possession of a firearm in public without a concealed carry license and without a Ford card. The defendant there defined the conduct at issue as merely carrying a handgun in public, but in rejecting that definition, the appellate court noted that possessing a firearm in public only becomes the crime of the statute when another statutory factor is present. So, in our case, the defendant argues that the armed violence statute violates the amendment because it criminalizes the possession of a firearm and even lawful possession as an element of the offense. However, an act is only criminalized if the statute makes it a crime. Here, the conduct at issue is the armed violence statute is not possessing a firearm, it's possessing a dangerous weapon while committing a non-excluded felony. The defendant presumably would not argue that the state could have convicted him of armed violence simply by proving that he was armed with a dangerous weapon. That's not what happened. He was armed with a dangerous weapon while also committing a felony, and that's what makes it a crime here. More specifically, and for purposes of his as-applied challenge, his possession of a handgun became armed violence when he simultaneously possessed a controlled substance. But, as we have discussed, the Second Amendment should not protect a person convicted of committing a non-excluded felony while possessing a weapon or a specific person commits the felony of possession of a controlled substance while armed with a handgun. For those reasons, the Second Amendment should not protect this conduct, and even if it did, the conduct that the defendant is proposing was the conduct isn't accurate. There's another reason why the defendant's facial challenge should fail because the Second Amendment does not protect all conduct prohibited in the armed violence statute. Pursuant to the statute, a person commits armed violence when he is armed with a dangerous weapon and commits a felony that is listed in the statute. A person is armed with a dangerous weapon if he carries a category one, two, or three weapon. Category one weapon are things like handguns, other firearms, sawed-off shotgun, a rifle, a semi-automatic firearm, or a machine gun. Category two would be things like other rifles, spring gun, stun gun, tasers, and category three would be like a bludgeon, a black jack, slung shot, sandbag, sand club, metal knuckles, etc. To prevail on his facial challenge, the defendant has to prove that there is no situation in which the statute could be validly applied and the particular facts related to him are irrelevant and he cannot do that in this case. He can only show that section 33A-2A is facially unconstitutional if he shows that the Second Amendment applies to any category one, two, or three weapon. In other words, even if the Second Amendment applies to the conduct of committing a non-excluded felony while armed with the handgun, his facial challenge can only succeed if he shows that the amendment also applies to the conduct of committing a non-excluded felony while armed with a sawed-off shotgun, a rifle, or machine gun, etc. Defendant cannot meet that burden here. Possessing a sawed-off shotgun, or a rifle, or a machine gun is conduct that is not protected by the Second Amendment. There are several cases that have held as such. Under the Heller case, for example, such weapons that I just listed are not typically possessed by law-abiding citizens for lawful purposes. And therefore, the defendant has not shown that no circumstance exists in which a person could be constitutionally convicted of armed violence with a category one weapon. But even if the defendant's conduct falls within the plaintext of the Second Amendment, the statute is still constitutional because it is consistent with long-standing historical tradition of similar regulation. This court must assess whether the challenge regulation is consistent if it proceeds to the next step in Bruin, and the appellate courts have repeatedly ruled that statutes disarming previously convicted felons satisfy the historical analysis requirement by Bruin. So surely, the statute would also protect conduct of an ongoing felony that is happening while committing armed violence, an ongoing felony is occurring. I see my time has expired, Your Honors. Anything further? Any questions? Just a shoulder just as long? No. No other questions. Thank you. Okay. Thank you, Mr. Skelton. You have some time in reply. You have yourself muted. Thank you. Sorry about that. I just want to make two quick points on rebuttal. Your Honors asked about the facts of the Rahimi case. And in the Rahimi case, Mr. Rahimi was harassing his ex-girlfriend, and his ex-girlfriend obtained a restraint, a protective order against him. Mr. Rahimi was also getting into road rage disputes and various, you know, firing a weapon during these various disputes that he was getting into. And the court in Rahimi still found that the Second Amendment applies to him and moved on to the second step of the Bruin analysis. And that's very persuasive or strong authority that the Second Amendment should apply to Jaylen. The second point I want to make also about the Rahimi decision was moving to the second step of the Bruin analysis. The court in Rahimi emphasized the judicial determination that Mr. Rahimi posed a danger to a specific person, his ex-girlfriend. In the proceedings to obtain this protective order, a court found Mr. Rahimi, you are a specific threat to CM, his ex-girlfriend. And the state seems to be analogizing, you know, making this analogous to the mere act of possessing 0.3 grams of cocaine while possessing a handgun. And, you know, I don't think that anybody can say that the facts in this case involved a specific judicial determination that Jaylen was a threat to a specific person. So does Illinois allow a person who is a admitted drug user to possess a firearm? Can you hold a FOIA card in Illinois if you have an admitted drug user? I'll answer that. So if the defendant is acknowledging that the cocaine was for his personal use, he's a known drug user, how is he protected by the Second Amendment under those circumstances? Well, again, I just go back to Conley and Daniels where it sounds like the, you know, this also just seems very similar to the federal statute at issue in those cases. And the court in those two cases found that, you know, as applied to that the conviction was unconstitutional as applied to those two defendants. So, you know, I just think that, you know, there's some technical differences between all these statutes, but they seem very similar in substance. And going back to Conley and Daniels, the courts there found it was unconstitutional. Those convictions were unconstitutional as applied. The statutes were unconstitutional as applied to the defendants. And I think this case is very analogous to the circumstances there. Okay. Anything further? No. Just for these reasons, we'd ask this court to reverse Jaylen's armed violence conviction as it violates the Second Amendment as applied to him perpetually. Okay. Thank you very much. Justice Schoeller, Justice Vaughn, any final questions? No questions. No other questions. Thank you. All right. Thank you both for your briefs and your arguments today. The court will take this matter under consideration and issue its ruling in due course.